## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**BARBARA MARIE FRANTZ,**

     **Plaintiff,**

     **v.**                            **CASE NO.  21-3117-SAC**

**STATE OF KANSAS, et al.,**

     **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff brings this pro se action under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the Topeka Correctional Facility ("TCF") and has paid the filing fee.  On June 14, 2021, the Court entered a Memorandum and Order and Order to Show Cause (Doc. 6) ("MOSC") directing Plaintiff to show good cause why her Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC.  Plaintiff filed an Amended Complaint (Doc. 9), and the Court entered a Memorandum and Order (Doc. 22) ("MOSC II") granting her an opportunity to file a second amended complaint to cure the deficiencies set forth in the MOSC II.  This matter is before the Court for screening her "Amended Second Amended Complaint" at Doc. 26.  The Court's screening standards are set forth in the MOSC.

## I.  Nature of the Matter Before the Court

Plaintiff alleged in her original Complaint that she has suffered "severe and substantial civil rights violations 1st degree attempt of murder and the conspiracy to commit pre-meditation 1st degree murder by Defendants."  (Doc. 1, at 2.)  Plaintiff asked the Court to "[p]lace Plaintiff in Federal Protective Custody for life saving medical care and treatment and to safe-guard her

protection as witness against defendant." *Id*. Plaintiff named the State of Kansas and Warden Gloria Geither as Defendants.

The Court found in the MOSC that Plaintiff's 82-page Complaint uses the Court's form but attaches a handwritten complaint along with multiple attachments. Plaintiff also filed a 436-page document that includes exhibits in support of her Complaint and a request for an emergency hearing to place her in Federal Protective Custody. (Doc. 4.) The Court found that:

> Plaintiff appears to allege that the State of Kansas is conspiring to murder her through multiple misdiagnoses of her medical condition regarding tumors on her liver. Plaintiff alleges that the conspiracy began prior to her arrest on January 28, 2017, and has continued by the concealment of her medical conditions from a medical error in October 2013 by KU Medical Hospital. (Doc. 1–2, at 2.) Although Plaintiff's claims are hard to follow, she appears to argue that she was wrongfully and maliciously pursued in her criminal case in order to "shut down [her] multi-million dollar lawsuit and [her] major complaints against KU Hospital." (Doc. 1–2, at 14.) Plaintiff claims that the Larned State Hospital and the Leavenworth County Sheriff's Office are "affiliated with KU Medical Center Hospital." *Id*. at 13. Plaintiff names the State of Kansas and Gloria Geither, Warden at TCF, as defendants.

(Doc. 6, at 2.)

The Court found in the MOSC that: Plaintiff names the State of Kansas and the Warden at TCF as the only defendants but has failed to allege how either defendant is responsible for her alleged misdiagnoses; mere supervisory status is insufficient to create personal liability; if Plaintiff is relying on the Warden's participation in her confinement, she must allege a misuse of power or show a failure to follow court orders; any claim seeking release from imprisonment is not cognizable in a § 1983 action; Plaintiff has not named any medical providers as defendants and has failed to allege how her named defendants can provide her relief; and the district court lacks jurisdiction to grant injunctive relief seeking continuation in, or return to, the witness protection program. The Court granted Plaintiff an opportunity to file an amended complaint in

which she names proper defendants and seeks proper relief regarding her medical claims.  The Court cautioned Plaintiff that she must also comply with Fed. R. Civ. P. 8's pleading standards.

Plaintiff's Amended Complaint (Doc. 9) includes over 200 pages of exhibits, continues to name the State of Kansas and Warden Geither as defendants; and continues to seek federal protective custody.  Plaintiff's Amended Complaint failed to cure the deficiencies set forth in the MOSC.

Plaintiff filed a Second Amended Complaint (Doc. 23) on November 11, 2021.  Plaintiff mailed the Second Amended Complaint to the Court despite being cautioned multiple times that she is incarcerated in a facility with mandatory electronic filing and that she should follow instructions available at the facility for transmitting the pleadings electronically to the Court. Plaintiff expressed concern that the facility was not electronically filing her pleadings.  Despite Plaintiff's allegations, on November 18, 2021, the Court received Plaintiff's electronically-filed "Amended Second Amended Complaint" at Doc. 26 ("ASAC").   The Court will screen the ASAC as the operative complaint.

Plaintiff continues to name the State of Kansas and Warden Geither as defendants in her ASAC.  Plaintiff appears to still be alleging that the State of Kansas conspired to "commit murder[,] attempted murder[,] assault, battery, negligence, 8th and 14th Amendments to the United States Constitution, KS Bill of Rights, due process clause, Basic Human Need for Medical Care, as a detainee not to be punished, Infliction of Cruel and/or Unusual Punishment depraved deliberate indifference to serious medical needs – ongoing."  (Doc. 26, at 1.)

Plaintiff alleges that Warden Geither violated the Kansas Bill of Rights and the United States Constitution by failing to perform a duty and to respond to grievances, and by neglecting steps to provide an adequate medical care system with intent to cause harm.  *Id*. at 2.

Plaintiff alleges in her ASAC that while she was a detainee at the Leavenworth County Jail ("LCJ") she was physically and sexually assaulted by staff on July 24–25, 2017.  Plaintiff alleges that she was denied medical care for her injuries caused by the assault.  Plaintiff also alleges that she was denied medical care for her pre-arrest diagnosis of organ damage and the condition worsened and is ongoing during her custody at the Kansas Department of Corrections ("KDOC").  *Id*.  Plaintiff alleges that she has "skull swelling, knots and tumors, and two herniated areas on her abdomen.  *Id*.

As Count I, Plaintiff alleges that all Defendants conspired to commit murder, attempted murder, depraved deliberate indifference, cruel and unusual punishment, and unnecessary and wanton infliction of pain and suffering in violation of the Eighth and Fourteenth Amendments to the United States Constitution, the Kansas Bill of Rights, and the ADA.  *Id*. at 3.  As Count II, Plaintiff alleges assault and battery and depraved deliberate indifference to serious medical needs by all Defendants.  *Id*.  As Count III, Plaintiff alleges that all Defendants were negligent and "depraved deliberate indifference to serious medical needs."  *Id*. at 4.

Plaintiff's ASAC is hard to follow, as she sets forth various unrelated claims.  She alleges she was assaulted by staff at the LCJ in 2017, but also alleges a denial of medical care and that the State of Kansas denied her procedural due process in her state habeas case and state criminal case.  *Id*. at 6.  Plaintiff alleges that her medical complaints are "so visible to the lay person leaving no other conclusion as it being conspiracy to commit 1st degree murder against the Plaintiff."  *Id*.

Plaintiff seeks compensatory and punitive damages, and injunctive relief requiring the TCF to provide her with access to a specialist.  *Id*. at 12.

## II.  Discussion

### A.  Statute of Limitations

To the extent Plaintiff alleges that she was assaulted in 2017 at the LCJ and that she was misdiagnosed by the University of Kansas Hospital in 2013, those claims are barred by the applicable statute of limitations.[1]  *See* Doc. 9–2, at 18 (attorney's letter to Plaintiff dated July 14, 2017, advising her that the limitations period for claims against the University of Kansas Hospital may expire on December 7, 2017).

The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of limitations and tolling principles.  *See Hardin v. Straub*, 490 U.S. 536, 539 (1989).  "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60–513(a)."  *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted).  The same two-year statute of limitations governs actions under 42 U.S.C. § 1985.  *See Alexander v. Oklahoma*, 382 F.3d 1206, 1212 (10th Cir.), *rehearing denied*, 391 F.3d 1155 (10th Cir. 2004), *cert. denied*, 544 U.S. 1044 (2005).

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action."  *Id.* (internal quotation marks and citation omitted).  In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent."  *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation

---

[1] The Court also notes that Plaintiff has not named LCJ staff or the University of Kansas Hospital as defendants.

omitted), *cert. denied* 549 U.S. 1059 (2006).  A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations.  *Id*. at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).

It plainly appears from the face of the ASAC that Plaintiff's claims regarding her alleged assault at the LCJ and her alleged misdiagnosis are subject to dismissal as barred by the applicable two-year statute of limitations.  Plaintiff filed this action on May 4, 2021.  It thus appears that any events or acts taken in connection with Plaintiff's claims took place more than two years prior to the filing of Plaintiff's Complaint and are time-barred.  *See Fratus v. Deland*, 49 F.3d 673, 674-75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed).  Plaintiff has not alleged facts suggesting that she would be entitled to statutory or equitable tolling.  Plaintiff should show good cause why these claims should not be dismissed as barred by the statute of limitations.

**B.  State of Kansas**

Plaintiff claims that the State of Kansas conspired to commit murder and denied her due process in her state habeas case and state criminal case.  The State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment. The Eleventh Amendment presents a jurisdictional bar to suits against a state and "arms of the state" unless the state waives its immunity. *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)).  Therefore, in the absence of some consent, a suit in which an agent or department of the state is named as a defendant is "proscribed by the Eleventh Amendment." *Pennhurst State*

*Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  It is well established that Congress did not abrogate the states' sovereign immunity when it enacted § 1983.  *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).  Because Plaintiff has neither made a specific claim against the State of Kansas nor shown any waiver of immunity from suit, she must show cause why this defendant should not be dismissed from this action.

Furthermore, Plaintiff has failed to allege facts supporting a conspiracy claim.  Plaintiff's conclusory allegations of a conspiracy are insufficient to state a claim.  A conspiracy claim under § 1983 requires the allegation of "specific facts showing an agreement and concerted action among the defendants."  *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).  In addition, a plaintiff must allege facts showing an actual deprivation of a constitutional right.  *See Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995) (in order to prevail on a section 1983 conspiracy claim, plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right").

Plaintiff's conspiracy claim is subject to dismissal for failure to allege adequate facts to establish the elements of this claim.  As noted, in order to state a claim of conspiracy, a plaintiff must allege facts showing both an agreement and an actual deprivation of a constitutional right.  *See Thompson*, 58 F.3d at 1517.  Plaintiff's does neither.  Even though Plaintiff's allegations are accepted as true on initial review, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ."  *Twombly*, 550 U.S. at 555.  Plaintiff's ASAC asserts conclusory and speculative claims of conspiracy with no supporting factual allegations.  Such bald assertions fail to state a viable claim for relief.  *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (per curiam) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.").

### C.  Warden Geither

Plaintiff alleges that Warden Geither failed to respond to her grievances.  Plaintiff acknowledges that a grievance procedure is in place and that she used it.  Plaintiff's claim is based on Plaintiff's dissatisfaction with the grievance process and her claims that the Warden failed to properly respond to her grievances.  The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system.  *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials").  Plaintiff's claims regarding the grievance process and the failure to properly respond to grievances are subject to dismissal for failure to state a claim.

Plaintiff has otherwise failed to set forth how the Warden personally participated in the deprivation of her constitutional rights and appears to rely on the supervisory status of the Warden.  An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.  *Kentucky v.*

*Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)).   Conclusory allegations of involvement are not sufficient.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").   As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability).   An official's liability may not be predicated solely upon a theory of respondeat superior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995).   A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011).  "[T]he

factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949). Plaintiff's claims against Warden Geither are subject to dismissal.

### D. Medical Claims

Plaintiff adds Centurion, Dr. Jena Lee, and HSA Michelle Calvin, as defendants in her ASAC. Plaintiff alleges that Centurion failed to provide adequate medical care by failing to act on information provided by Plaintiff through sick calls, denying and delaying access to providers, denying doctors' orders for an MRI and ENT specialist, and interfering with her treatment for a previous diagnosis. *Id*. at 7.

In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell*." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014) (unpublished) (citations omitted). Plaintiff has failed to allege the requisite causative custom or policy. This action is subject to dismissal as against Defendant Corizon. Plaintiff is directed to show good cause why her claims against Defendant Corizon should not be dismissed.

Plaintiff alleges that Dr. Lee denied and delayed access to medical care. Plaintiff alleges that during her September 20, 2021 sick call, Dr. Lee indicated that she did not see any "facial disfigurement" when Plaintiff alleged that Plaintiff's skull was swelling to the point of moving her left ear and eye upward causing Plaintiff's eyeglasses to fit lop-sided on her face. *Id*. at 7. Plaintiff alleges that this leaves no other conclusion than that Plaintiff is being murdered by Dr. Lee and the other Defendants. *Id*. Plaintiff alleges that Defendant Calvin is the Medical

Administrator for Centurion and failed to schedule appointments with outside providers when a prisoner needs specialized treatment or evaluation. *Id*. at 8.

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)

(prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Plaintiff's allegations do not show a complete lack of medical care, but rather show Plaintiff's disagreement regarding the proper course of treatment.  Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm.  *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993).  In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay.  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted).  "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'"  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff has failed to show that Defendants disregarded an excessive risk to her health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference.  Plaintiff's claims suggest, at most, negligence, and are subject to dismissal.

## III.  Response Required

Plaintiff is required to show good cause why this matter should not be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **January 7, 2022,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why this matter should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated December 8, 2021, in Topeka, Kansas.**

> **s/ Sam A. Crow**
> **Sam A. Crow**
> **U.S. Senior District Judge**