IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BARBARA MARIE FRANTZ,

    **Plaintiff,**

    v.                                        CASE NO.  21-3117-SAC

STATE OF KANSAS, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

    Plaintiff brings this pro se action under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the Topeka Correctional Facility ("TCF") and has paid the filing fee.  On June 14, 2021, the Court entered a Memorandum and Order and Order to Show Cause (Doc. 6) ("MOSC") directing Plaintiff to show good cause why her Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC.  Plaintiff filed an Amended Complaint (Doc. 9), and the Court entered a Memorandum and Order (Doc. 22) ("MOSC II") granting her an opportunity to file a second amended complaint to cure the deficiencies set forth in the MOSC II.  The Court screened Plaintiff's "Amended Second Amended Complaint" at Doc. 26, and on December 8, 2021, entered a Memorandum and Order (Doc. 29) ("MOSC III") directing Plaintiff to show good cause why this matter should not be dismissed.  This matter is before the Court on Plaintiff's Response (Docs. 30, 31.)

    Plaintiff disagrees with the medical care she has received and continues to make claims regarding an alleged assault she suffered at the Leavenworth County Jail ("LCJ") in 2017, the denial of due process in her state habeas case, corrupt transcripts, and an alleged conflict of interest for her to be in state custody.  (Doc. 30, at 10.)  Plaintiff also believes that staff moved

1

her to a cell in an attempt to expose her to COVID. *Id*. at 34. Plaintiff continues to seek protective custody. *Id*. at 4.

Plaintiff's claims are set forth in detail in the MOSC, MOSC II and MOSC III. In the MOSC III, the Court found that to the extent Plaintiff alleges that she was assaulted in 2017 at the LCJ and that she was misdiagnosed by the University of Kansas Hospital in 2013, those claims are barred by the applicable statute of limitations.[1] *See* Doc. 9–2, at 18 (attorney's letter to Plaintiff dated July 14, 2017, advising her that the limitations period for claims against the University of Kansas Hospital may expire on December 7, 2017). The Court also found that Plaintiff has not alleged facts suggesting that she would be entitled to statutory or equitable tolling. Plaintiff's response fails to address this issue and fails to show good cause why these claims should not be dismissed as barred by the statute of limitations.

The Court also found that the State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment and that Plaintiff failed to allege facts supporting a conspiracy claim. Plaintiff has failed to address these issues in her response and has failed to show good cause why these claims should not be dismissed.

The Court found that Plaintiff's claim against Warden Geither is based on Plaintiff's dissatisfaction with the grievance process and her claims that the Warden failed to properly respond to her grievances. The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system. *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at

---

[1] The Court also noted that Plaintiff has not named LCJ staff or the University of Kansas Hospital as defendants.

\*7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at \*7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials"). Plaintiff's response fails to address this issue and fails to show good cause why her claims should not be dismissed for failure to state a claim.

In the MOSC III, the Court found that Plaintiff's medical claims show a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment and do not constitute cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 106–07 (1976); *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Plaintiff has clearly received medical care while incarcerated.[2] In response to her September 21, 2021 grievance, the Health Service Administrator responded indicating that since Plaintiff's incarceration at TCF she has been seen a minimum of 37 times in nursing sick calls, she has been scheduled for offsite appointments, and she has refused at least one of the appointments. (Doc. 30, at 27.)

---

[2] *See, e.g.*, Doc. 30, at 31–32 (referencing ultrasounds that were performed on October 16, 2020, February 19, 2021, and February 26, 2021); Doc. 9–4, at 3 (results of October 16, 2020 thyroid ultrasound); Doc. 12, at 23 (referencing a meeting on July 20, 2021, with Dr. Rae, Ms. Davis, Dr. Lee, and an unknown mental health provider); Doc. 9–3, at 8 (Plaintiff noting she has been seen by numerous nurses, Dr. Lee, an x-ray tech and an MRI tech); Doc. 9–4, at 4–5 (results of December 2, 2020 Diagnostic Profile II).

In her response, Plaintiff continues to disagree with her medical providers. *See* Doc. 30, at 17–18; *see also* Doc. 12, at 18 (Plaintiff's disagreement with her mental health diagnosis of somatic symptom disorder and personality disorder); Doc. 9–3, at 9 (TCF Interdepartmental Memorandum noting Plaintiff attended an offsite endocrinology consultation on February 10, 2021, and that Plaintiff disagreed with the documented results). Plaintiff acknowledges that she was seen by Dr. Lee on November 18, 2021, and was offered medication. Plaintiff states that she asked Dr. Lee how medication would help with her skull swelling and Dr. Lee responded that she did not see any skull swelling. (Doc. 30, at 8.) Plaintiff disagrees with Dr. Lee because Plaintiff believes that her eyeglasses are sitting lop-sided on her head, thus showing that her skull is swelling. Plaintiff claims that Dr. Lee stated that Plaintiff has a scheduled appointment for a G.I. consult, but Plaintiff is "worried they are going to pay off this G.I. as they did with Dr. Correa endocrinologist." *Id*. at 9.[3] Plaintiff alleges that she has knots that can be felt by physical exam but they do not show up on "the corrupted ultra sound report." *Id*.

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation

---

[3] It appears that Plaintiff saw an offsite endocrinologist on January 18, 2021 and February 10, 2021. (Doc. 30, at 25, 26.)

omitted).  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

As the Court previously held in the MOSC III, a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment.  Plaintiff's allegations do not show a complete lack of medical care, but rather show Plaintiff's disagreement regarding the proper course of treatment.  Plaintiff has failed to show that Defendants disregarded an excessive risk to her health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference.  Plaintiff's claims suggest, at most, negligence, and are subject to dismissal.

Plaintiff has failed to cure the deficiencies set forth in the MOSC, MOSC II and MOSC III.  Plaintiff has failed to show good cause why this case should not be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated January 26, 2022, in Topeka, Kansas.**

>> **s/ Sam A. Crow**
>> **Sam A. Crow**
>> **U.S. Senior District Judge**